Good morning, Your Honors. Matt Campbell on behalf of Justin Werle. I'd like to reserve three minutes for rebuttal. Okay. Keep your eye on the clock. I will. The primary issue presented in this appeal is whether Washington felony riot constitutes a violent felony for purposes of ACCA. While Mr. Werle had a number of them, if they do not qualify, he would not have been eligible for an ACCA-enhanced sentence and would have been facing a statutory maximum sentence of 10 years. Washington state felony riot convictions are overbroad, and they are overbroad in two ways. The first being that under Washington law, the term force is pure Newtonian force, or it involves offensive touchings. The second way that the statute is overbroad... Would you make those two distinctions more clear, including an alternate definition of Newtonian force? Certainly, Your Honor. What are the two things? One is... Under Washington state law, the term force refers to any amount of force, any Newtonian force, an offensive touching, or anything of the like. Newtonian force, to me, means gravity. I guess he had other ideas, but that's the only one I can remember. What is... What I'm distinguishing between is that... I get the distinction between touching and not touching, but what else are you saying? Certainly, as opposed to a violent felony, which under Supreme Court precedent in Johnson v. United States, the 2010 Johnson, would require violent physical force, something beyond an offensive touching, because in the Johnson case, the Florida statute at issue there only required an offensive touching, and the Supreme Court said that that was not what was required under an ACCA violent felony. Under Washington state law, any sort of touching, an offensive touching, which doesn't constitute violent physical force, would be enough. Okay. The second... The other one. The second overbreadth issue in regard to Washington felony riot is that it involves somebody who in any way participates. This is broader, as we set forth, than typical accomplice liability or the like. Now, under De Camp, the question then becomes, are these two overbroad terms... There's a third candidate that I wasn't sure if you were arguing or not, but what about the question of use of a weapon versus armed with a weapon? Are you not arguing that that is an overbreadth agency as well? Well, I... Okay. I am, although... Not in will, I guess. I am in will. I guess I saw that more as the government's effort to try to show that the overbreadth was sufficiently tailored. As I understand it, that's the government's answer to both of your first two, but I'm just wondering whether that isn't analytically a third overbreadth argument. I think one could look at it as a third overbreadth or as sort of a defense raised by the government. Either way, no, or yes, I agree, that is an overbreadth, that it does not qualify. And the reason is that under Washington law, being armed simply requires a weapon to be within reasonable access. It does not require, for example, use of the actual weapon. Do you have a case for that, a Washington case? Yes, Your Honor. If you look at, and I cited it, State v. Sabala, S-A-B-A-L-A, and it's cited in the briefs, it discussed the issue of being armed, and in fact it said that the weapon need not even be shown. Are you familiar with State v. Moe or State v. Gursky? Do those ring any bells? Your Honor, the Gursky case does ring a bell, although I can't say that I recall the exact facts of it. But in Sabala, it specifically stated that the weapon need not even be shown. If the weapon need not even be shown, then presumably the victim need not ever see it or be aware of it. So what we have here, unlike, say, the United States v. Juvenile Male case that the government cites, is we have a situation where a weapon need not be employed at all. And if we look at cases like, excuse me, it's U.S. v. Juvenile Female, if we look at that case, if we look at the Jenin case, which I cited in my brief, where assaults with deadly weapons have been found to be violent felonies or crimes of violence, those have been based on the notion that the weapon itself was actually used. That is not what's required here under felony riot. Once we accept, as I'm going to assume for purposes of this question that we do, once we accept that the statute is overbroad, next question is, is the statute divisible? How do you respond to that question? Yes, Your Honor. Simply, it's not. Because? Because the term force is not broken down into alternative elements, as de Camp and his progeny teaches. It simply says force. And if it's not divisible, we then can't use the modified categorical. I mean, that's the consequence. That is correct. We can't find out what he really said he did. Absolutely not. And I think we see that in recent cases like Dominguez-Mariocchi, as well as Cabrera-Gutierrez, where if the statute isn't divisible, there is no modified categorical approach, game over. And I think that's the case with all of the divisibility issues that we're raising here. We simply never get to the modified categorical approach. Why are the other two not divisible? Well, I think the in any way participates, again, is not broken down in any way. It doesn't say in any way participates by either aiding and abetting or being a conspirator. In that case, you might have the typical comma situation where you could argue it was divisible. Here we simply have an in any way participates, which is simple. Well, the thing you'd want to divide is in any way participates versus aids and abets or whatever the other language is. Correct. And you would look then to Washington State jury instructions and say, does it say these are elements or does it say these are means? Does the jury have to find one or the other, or could some jurors find one and some find the other? I would agree, but I think that presupposes the idea that within the statute itself, that there was a separation of that term in any way participates. We don't have that. We have simply one single phrase, in any way participates, which by definition is overbroad. No, the divisibility would be between in any way participates on the one hand and I don't know what it is. Aids and abets or participants. Uses or attempts to use, Your Honor. Uses or attempts to use. You might say it's divisible between uses, attempts to use, or in any way participates, and you could divide those three theoretically. And the way you would determine whether that was actually divisible elements would be if they are elements as opposed to means or something else. Do they have to be found by the jury unanimously to be one of those three, or could the three jurors find one and three jurors find the other, et cetera? I understand Your Honor's question, and I would agree to the extent that they could be seen as being alternatives, one would need to look and find that they are in fact elements as opposed to means of committing the offense. And there's no case law that seems to hold that they are actually alternative elements. Or to the contrary. Is there any case law either way? Your Honor, I have not encountered any case law in either way in that regard. However, since it is the government's burden to in fact prove that these are in fact distinct elements that are divisible, I think the case law shows that they haven't done so. Or we could look to jury instructions. Do the Washington jury instructions divide those things out in any way? Your Honor, to the best of my knowledge, I would have to go back and look at the exact jury instructions to make sure they haven't changed them. But to the best of my knowledge, based on the jury instructions I have seen, no, they do not. They simply recite the statutory language. I'd like to reserve the remainder of my time if I can unless there are questions. Good morning, Your Honors. May it please the Court, my name is Tim Olms. I'm an assistant U.S. attorney from Spokane. Here representing the government. Your Honor, the government's position is that the statute in question is divisible. I'd like to talk about the divisibility part, and I'd also like to talk about the issue of the degree of force that's required. So you can say it's overbroad? Yeah. It is. The statute itself is overbroad. In what ways? Well, the primary thing is that it allows the crime to be committed either against a person or against property. That's not really an issue. Well, you're asking me about the statute. That's one of the problems with the statute for purposes of an armed career criminal analysis. But is it overbroad in the other three ways, use of force versus participation in force, physical force versus touching, use of weapon versus armed with weapon? Is it overbroad in each of those ways as well? No, Your Honor. Why not? I mean, would you not agree that a statute could be overbroad in more than one way and that one would have to analyze each of them? Yes, Your Honor. And divisibility could be analyzed separately for each of those ways? It could. So in what of those three ways is it not overbroad? Or do you concede it's overbroad in all three ways? Well, the defense argument that the degree of force can be touching as opposed to the physical force that the statute references derives from the case of Pasco v. Ross, which is a 1985 Washington case. And that case was specific to assault. And ultimately it did say that assault and the degree of force in Washington for assault can be committed through the touching. It doesn't require the level of force that I believe would be required by the federal statute for the armed career criminal. So what I would argue here is that we have a kind of assault that should be analyzed under Pasco v. Ross. So I agree with the defense on that position. And I think the defense then has to agree with me that in order for Pasco v. Ross to apply, we're really applying an assault analysis. And that brings us within the juvenile female case, which was also analyzing an assault and determined that being armed with a firearm or a deadly weapon during an assault constitutes a violent crime. Now, in this particular case, this statute, the Washington courts say that for the felony riot to apply, it is the defendant who has to be armed with the deadly weapon. So it's the actor, which the Washington courts in the case of Montahano, which I cite in my brief 2008 case, says that the actor has to be the defendant. So that defendant has to be the one who's armed. And what does armed mean? Well, in the 2007 case, it's the Brown case. But let me state v. Brown 2007, which I provided the court with a supplemental notice of authority. The Washington Supreme Court held that in order to be armed, that the one who's armed It had to be theirs. It couldn't be laying on the bed when they burglarized the house. That it had to be used in some way. There had to be a direct nexus between- I don't think so. Under state v. Brown. Wasn't that the one where the gun was on the bed? Armed to the victim, not to the defendant? Am I thinking of the wrong case? This is the one where the court said that a person is not armed merely by virtue of owning or even possessing a weapon. There must be some nexus between the defendant, the weapon, and the crime. And it requiring both that the weapon be readily available and easily accessible as well as a nexus based on the facts of the case. So it's hypothetical of he's in the park cheering on the attack and he has a penknife in his pocket but nobody knows it. Under Washington law, he's armed with a weapon but he's not using it. That would not constitute being armed for purposes- Why not? Because under the precedent of state v. Brown- But there is no nexus. If he's standing in the park with a penknife in his pocket, there's no nexus between the penknife in his pocket and the fact that he's cheering on someone who's beating up the victim. Even under Brown. If there's no nexus, then armed as a term of art under Washington law means that they're not armed. It doesn't meet that element. In order to meet that element, there has to be something additional that creates a direct nexus between the weapon, the defendant, and the offense. So the combination of Brown and Montahano says that the defendant themselves has to be the one who's armed and that it has to be deployed in some manner, actively used. In addition, we do have prior Ninth Circuit decisions. They were unpublished but they were decisions that the district court looked at and relied upon which found that the riot statute, or at least riot against a person, felony riot against a person, was a crime of violence. That was the Lopez-Salas case, which I cite in my brief, and also the Frenetic case from 2009. In that 2009 case, the Ninth Circuit panel actually said that it was divisible and used. I have to say I don't fault the district judge for looking at those unpublished decisions, but of course you know the rule here. Those are not precedent, and perhaps the district judge should have pretended they didn't exist, but they mean nothing to us today. Well, in my effort to defend what happened before the district court, I think it was part of the district court's consideration. I'm quite sure it was. Also in terms of looking at divisibility in general, I would refer the court to footnote 2 of the DeCamp decision, which talks about divisibility in an interesting way because it addresses a charge brought by the minority in that case. Basically what it says is that if the court is having trouble distinguishing between alternative elements and alternative means, that for practical purposes there shouldn't be any real difficulty because if the court looks at the charging document and or the jury instructions, it should set forth what the elements are. Can I get a clarification? Is your Pascal and Brown argument part of your argument that your analogy to the ACCA, is that the armed career? You're arguing that it's a per se violent felony if one analogizes to those cases. I think you cited Marquez from the Fifth Circuit. Yes, Your Honor. I'm arguing that it's a violent felony because it requires use of force in conjunction with being armed with a deadly weapon. Marquez was decided under the residual clause of ACCA, which the 2015 Supreme Court Johnson case said was override. Right. So what does that do to your support for your argument? Well, I'm not arguing that it's a violent crime. That issue is no longer, I think, viable. So we're just strictly looking at whether… You're analogizing to those cases. Well, I think that the analogy of whether it constitutes a crime of violence is based upon really the juvenile female case, which says that the amount of force necessary for a simple assault while combined with being armed constitutes a crime of violence. I think that's the analysis. That's what we have here. Okay. Your Honor… We're just taking you over time. If you've got a summing up remark, please feel free to make it. No, I did not have time to address, obviously, alternate issues raised in the briefing, but that's really what I had to offer the Court this morning. Thank you. Thank you. Thank you, Your Honor. In brief, the juvenile female case that the government relies on dealt with the assault statute in which a person actually uses the weapon in question to commit the assault. That is not what we have here, and this flows into some of the questions that Judge Wilken had asked. What we have here is a completely separate situation where the Washington statute only requires that a person be armed. They need not use the weapon at all during the crime. In fact, it need not be displayed. In fact, the defendant need not be involved, strictly speaking, in an assault in any way. Judge Wilken had referenced my hypothetical about a person essentially cheering on others. That satisfies the Washington statute if that person has the penknife sitting in their pocket. Juvenile female addresses a wholly separate situation where a person actually commits an assault using a weapon, and that is what distinguishes juvenile female from this case. There was discussion of State v. Brown. Again, State v. Brown simply stands for the proposition that the weapon must be easily accessible, but it could be for offensive or defensive purposes, but it need never manifest itself as part of the offense. Need it have a nexus to the offense? Your Honor, it seems there is a loose nexus requirement, but the cases that all discuss nexus appear to discuss the issue as to whether mere presence at a scene, and typically the cases involve some sort of drug bust, for lack of a better term, where there happens to be a firearm in a house, etc. There appears to need to be some nexus, but again, from reading in context, whether it's the Brown case, whether it's Montajano, whether it's the Sabala case, it would appear that a person simply carrying one but not displaying it during an offense would satisfy that requirement. Very briefly, I don't think that the Frenetich or Lopez case give us anything because those dealt simply with the property versus person distinction, a distinction I'm not raising. And then finally, in regard to Justice Kagan's footnote 2 in De Camp, that was a direct response to Justice Alito's argument that Shepard and Taylor involve means and not elements, and all Justice Kagan said in that footnote was simply that whatever we call something, the documents will only show us what the elements are. It doesn't stand for the proposition that the divisibility analysis is somehow not applicable. Thank you. Thank you. Thank both of you for good arguments.
judges: Wilken, Fletcher, Fisher